# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Marcus J. Harris,

              Petitioner,     Case No. 18-cv-11915

v.

                              Judith E. Levy
                              United States District Judge

Greg Skipper,

              Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, AND GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS

Petitioner Marcus Harris was convicted of assault with intent to commit murder, Mich. Comp. Laws § 750.83, armed robbery, Mich. Comp. Laws § 750.529, discharging a firearm in a building causing serious impairment, Mich. Comp. Laws § 750.234b(4), assault with a dangerous weapon, Mich. Comp. Laws § 750.82, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. He seeks habeas corpus relief under 28 U.S.C. § 2254 on the grounds that

he was denied his right to a fair trial by the admission of irrelevant and prejudicial evidence and his defense counsel was ineffective.

Because the Michigan Court of Appeals' decision denying these claims was neither contrary to Supreme Court precedent nor an unreasonable application of it, the petition for habeas corpus is denied. The Court also denies a certificate of appealability and grants Petitioner leave to proceed *in forma pauperis* on appeal.

**I. Background**

Petitioner's convictions arise from a robbery and shooting which occurred at a hotel in Redford, Michigan. In December 2014, Laquilla Tyner advertised prostitution services on backpage.com. On December 9, 2014, she was working out of the Hilltop Motel and had a couple of customers before she was contacted by a man she later identified as Petitioner. She gave him her room number and sometime later, he arrived there. After he paid Tyner fifty dollars, Petitioner went into the bathroom to put on a condom. When he emerged, Tyner briefly turned her back to him. As she turned to face him once again, Petitioner was pointing a gun at her and demanding all her money. Tyner pushed him

to the floor and reached for her cellphone. Petitioner grabbed the phone out of her hand, shot her multiple times, and fled.

Tyner originally identified another man, Leonard Irvin, as the perpetrator. She picked him out of a photographic lineup shown to her while she was being treated at the hospital on the day of the shooting. During a preliminary examination, Tyner recanted her previous identification and testified that Irvin was not the perpetrator.

Several months later, Tyner was shown another photographic lineup and identified Petitioner as the perpetrator. She again identified him from an in-person lineup and at a preliminary examination.

The prosecutor also presented testimony from Ashley Sellenraad who testified as an expert in the field of latent fingerprint analysis. Sellenraad obtained a very high-quality print from Tyner's cellphone and was able to say "with a reasonable degree of scientific certainty" that the latent fingerprint matched Petitioner's fingerprint. (ECF No. 6-10, PageID.512.)

Police detective James Meade accessed the call history on Tyner's cellphone and determined that the last number to call the phone before

3

the shooting came from a phone registered to Sharae Ivey, the mother of Petitioner's child.

Federal special agent Stan Bure, an expert in the field of forensic cellular analysis, testified that Petitioner's cell phone was in the vicinity of the Hilltop Motel around the time of the shooting.

Petitioner was convicted by a Wayne County Circuit Court jury, and, on December 3, 2015, he was sentenced to twenty to fifty years for assault with intent to commit murder and armed robbery, five to twenty years for discharging a firearm in a building causing serious impairment, one to four years for felonious assault, and two years for possession of a firearm when committing a felony.

Petitioner filed an appeal as of right in the Michigan Court of Appeals raising two claims: (i) the trial court improperly admitted prejudicial evidence under Mich. R. Evid. 404(b), and (ii) counsel was ineffective in failing to impeach the victim with a prior inconsistent statement and failing to present evidence that Petitioner did not fit the physical description of the perpetrator. The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Harris*, No. 330934, 2017 WL 2791030 (Mich. Ct. App. June 27, 2017). The Michigan Supreme Court

denied Petitioner's application for leave to appeal. *People v. Harris*, 501 Mich. 953 (Mich. 2018).

Petitioner then filed this habeas corpus petition. (ECF No. 1, PageID.9.) He raises these claims:

> I. Mr. Harris was denied his right to a fair trial by the trial court's admission of evidence under MRE 404(b) which was irrelevant and highly prejudicial.
>
> II. Mr. Harris was denied his right to effective assistance of counsel by trial counsel's failure to impeach Mr. Harris's accuser with a previous description of her attacker which was inconsistent with Mr. Harris's appearance and failure to present evidence Mr. Harris could not have ever fit the earlier description.

Respondent filed an answer in opposition arguing that the Petition should be dismissed because it was not signed and verified and that the claims are meritless. (*See* ECF No. 5.) Petitioner has now submitted a signed Petition. (*See* ECF No. 8.)

## II. Legal Standard

A § 2254 habeas petition is governed by the heightened standard of review set forth in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. To obtain relief, habeas petitioners who raise claims previously adjudicated by state courts must "show that the relevant state-court 'decision' (1) 'was contrary to, or involved an

5

unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)). The focus of this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations and quotation marks omitted). Ultimately, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Additionally, a state court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III. Discussion

#### A. Admission of Evidence

Petitioner maintains that the trial court improperly admitted evidence of his cellphone's browser history under Mich. R. Evid. 404(b). Petitioner's browser history showed that he accessed backpage.com approximately 100 times from March 2015 through his arrest on July 23, 2015. (ECF No. 6-7, PageID.138-39.)

The Michigan Court of Appeals considered this issue on direct appeal and held that the evidence was properly admitted:

> [T]he Michigan Supreme Court stated the framework for analyzing admissibility under MRE 404(b):
>
>> Evidence relevant to a noncharacter purpose is *admissible* under MRE 404(b) *even if* it also reflects on a defendant's character. Evidence is *inadmissible* under this rule *only* if it is relevant solely to the defendant's character or criminal propensity .... Any undue prejudice that arises because the evidence also unavoidably reflects the defendant's character is then considered under the MRE 403 balancing test, which permits the court to exclude relevant evidence if its "probative value is substantially outweighed by the danger of unfair prejudice . . . ." MRE 403. . . .
>
> . . . .
>
> The trial court properly admitted the evidence. Defendant contacted the victim to engage her in her "escort service," a service the victim advertised on Backpage.com.

7

Shortly after he arrived at the victim's motel room at the Hilltop Motel, defendant shot and then robbed the victim. The browser history showed that defendant visited Backpage.com after the incident with the victim took place. The trial court ruled that the browser history extracted from defendant's personal cellphone was admissible only "for purposes of scheme or plan[.]" Those are proper purposes under MRE 404(b). If the jury found that defendant's visits to Backpage.com after the incident were for the purpose of locating "escort services," then defendant's visits to Backpage.com were highly probative as to how defendant identified and then contacted the victim prior to the incident.

Defendant contends on appeal that the trial court erred when it admitted defendant's browser history into evidence to establish a common plan or scheme by defendant. The browser history extracted from defendant's phone indicated that defendant visited Backpage.com on multiple occasions after the incident occurred at the Hilltop Motel. Defendant argues that his subsequent visits to Backpage.com cannot be part of a common plan or scheme because the acts in question must be part of a single common plan, and therefore, his subsequent visits to Backpage.com are irrelevant because those visits could not be part of a common plan to rob the victim after she had already been robbed.

Defendant's contention is without merit. Under MRE 404(b)(1), evidence of defendant's acts "subsequent to the conduct in the case" are admissible to show a "scheme" or "plan." As such, the mere fact that defendant visited Backpage.com after the incident occurred does not render the evidence irrelevant. And defendant's contention that evidence of defendant's subsequent visits to Backpage.com must necessarily have been part of his scheme or plan to rob the victim is without merit. "[R]elevant similar acts are not limited to circumstances in which the charged and uncharged acts 'are part of a single continuing conception or plot.'" *People v. Ackerman,* 257 Mich. App. 434, 440

8

> (2003), citing *People v. Sabin*, 463 Mich. 43, 64 (2000). "[E]vidence of other acts 'must indicate the existence of a plan rather than a series of similar spontaneous acts,' but unlike evidence of other acts used to prove identity, 'the plan need not be unusual or distinctive; it need only exist to support the inference that the defendant employed that plan in committing the charged offense.'" *Ackerman*, 257 Mich. App. at 440, citing *Sabin* 463 Mich. at 65 (citation and quotation marks omitted). The victim testified that she advertised her escort services on Backpage.com, and she confirmed that defendant contacted her on the number she listed on that website. Therefore, defendant's subsequent usage of the same website that the victim advertised her escort services on supports the inference that he previously used the website to identify and contact the victim.

*Harris*, 2017 WL 2791030, at *2–3.

The Michigan Court of Appeals' decision was not contrary to, or an unreasonable application of, Supreme Court precedent. First, to the extent that Petitioner raises this claim as a violation of state law, his claim is not cognizable on federal habeas review. *See Shoemaker v. Jones*, 600 F. App'x 979, 984 (6th Cir. 2015). A federal court may grant an application for writ of habeas corpus only on the ground that the petitioner is in custody in violation of the Constitution, laws, or treaties of the United States, and not for perceived errors of state law. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

9

Second, Petitioner fails to show a due process violation. The admission of evidence may violate the Due Process Clause (and thereby provide a basis for habeas relief) where the admission "is so extremely unfair that its admission violates 'fundamental conceptions of justice.'" *Dowling v. United States*, 493 U.S. 342, 352 (1990) (quoting *United States v. Lovasco*, 431 U.S. 783, 790 (1977)); *see also Wilson v. Sheldon*, 874 F.3d 470, 475 (6th Cir. 2017). The Supreme Court "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Estelle*, 502 U.S. at 73 (quoting *Dowling*, 493 U.S. at 352). To violate due process, an evidentiary decision must "offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) (citation omitted).

Here, the disputed evidence was admitted for a proper purpose: to show Petitioner's familiarity with and frequent use of backpage.com. Further, the Supreme Court has not held that a state violates due process by admitting evidence of a defendant's other bad acts. *See Bey v. Bagley*, 500 F.3d 514, 520 (6th Cir. 2007). Given the state court's conclusion that the evidence was properly admitted under state law and the absence of

any clearly established Supreme Court precedent prohibiting this type of testimony, the Court cannot conclude that the admission of this evidence was unconstitutionally egregious or fundamentally unfair such that Petitioner was deprived of his right to a fair trial.

The Michigan Court of Appeals further held that, even if the trial court abused its discretion in admitting the browser history, any error was harmless. *Harris*, 2017 WL 2791030 at *3. The court of appeals characterized the evidence of Petitioner's guilt as "overwhelming" citing this evidence: Ashley Sellenraad's testimony that the fingerprint found on the victim's phone matched Petitioner's, Special Agent Brue's testimony that an analysis of cellphone activity on December 9, 2014 during the relevant time period placed Petitioner in the approximate location of the Hilltop Motel, and that the last phone number that made a call to the victim's phone before the robbery was registered to the mother of Petitioner's child. *Id.*

A state court's decision that an error was harmless constitutes an adjudication "on the merits" to which the highly deferential AEDPA standard applies. *See Davis v. Ayala*, 576 U.S. 257, 269 (2015). Thus, this Court may not grant relief unless the state court's "'*harmlessness*

11

*determination itself* was unreasonable.'" *Id.* (quoting *Fry v. Pliler*, 551 U.S. 112, 119 (2007)); *accord Stewart v. Trierweiler*, 867 F.3d 633, 636 (6th Cir. 2017).

The Court sees nothing in the record which would call into question the Michigan Court of Appeals' determination that any error was harmless. Accordingly, relief is denied on this claim.

### B. Ineffective Assistance of Counsel

Petitioner's second claim concerns defense counsel's performance. Petitioner alleges that counsel was ineffective for failing to impeach Laquilla Tyner with a prior inconsistent statement describing Petitioner's appearance and for failing to present evidence about Petitioner's appearance at the time of the shooting.

A violation of the Sixth Amendment right to effective assistance of counsel is established where an attorney's performance was deficient and the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To establish that an attorney's deficient performance prejudiced the defense, the petitioner must show "a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

The standard for obtaining habeas corpus relief is "'difficult to meet.'" *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)). In the context of an ineffective assistance of counsel claim under *Strickland*, the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable" but whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

13

Petitioner contends that counsel should have cross-examined Tyner about inconsistencies in Tyner's description of his hairstyle. The state court summarized the relevant testimony:

> During the preliminary examination, defendant's trial counsel asked the victim about her attacker: "[s]o, did he have clothes—was he undressed?" The victim replied, "[n]o, he had on all black. At the time he had braids." During trial, defendant's trial counsel cross-examined the victim about whether defendant's head was covered during the incident. She testified that she did not remember whether defendant's head was covered at the time of the incident. She noted that "it was cold," and she speculated "he probably had a skully on," however, she stated that "I didn't pay attention. I just wanted the money." Defendant's trial counsel replied, "[o]kay. Now you recall at a preliminary examination indicating that the person had braided hair?" The prosecutor interjected and asked defendant's trial counsel what page that testimony could be found on, and he responded by apologizing for being unable to find the page number. Ultimately, defendant's trial counsel stated, "[w]ell let's move on," and the victim did not answer his question regarding her attacker's hairstyle at the time of the incident.

*Harris*, 2017 WL 2791030, at *5.

Petitioner argues that by moving on, counsel missed an important opportunity to impeach Tyner. The Michigan Court of Appeals held that counsel was not ineffective:

> [D]efendant's trial counsel then cross-examined the victim about her initial identification of a different individual as her attacker. She confirmed that she had initially identified another individual as her attacker while she was medicated

14

> and in the hospital after the incident. The victim stated that individual "wasn't the person," and she noted that the police had "asked me a dumb question while I was drugged up." During his closing argument, defendant's trial counsel posed the following question to the jury: did any of the juror's recall what the prosecutor was wearing two days earlier? The trial court judge did not allow any of the jurors to answer this question, however, defendant's trial counsel stated that "the point I'm trying to get at is that [the prosecutor] and I have been before you for quite a few hours now trying this case, but yet your memory as to what we were wearing is nil. That's the point I'm trying to make as far as identification is concerned." He then emphasized the importance of identification, and he then asked the jury to be "very careful in rendering" the verdict.
>
> The record on appeal does not provide an explanation as to why defendant's trial counsel decided to move on from his attempt to impeach the victim regarding her earlier testimony. However, "[t]his Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *Russell*, 297 Mich. App. at 716, citing *Horn*, 279 Mich. App. at 39. Further, it is clear from the record that defendant's trial counsel pursued other avenues to undermine the credibility of the victim's identification of defendant during cross-examination and again in his closing argument. Therefore, defendant has failed to carry his burden to demonstrate that his trial counsel rendered an objectively unreasonable performance.

*Id*. at *5-6. Further, considering the "overwhelming evidence of [Petitioner's] guilt[,]" even if defense counsel's performance was deficient, the court held that Petitioner "cannot demonstrate that error was outcome determinative." *Id* at *6.

15

The Michigan Court of Appeals' decision was not an unreasonable application of, or contrary to, *Strickland*. Counsel did not entirely forego impeachment of Tyner. Instead, he focused on Tyner's original identification of a different individual as the perpetrator. An attorney acting reasonably could have concluded that it was more beneficial to proceed to Tyner's recanted identification than to focus on the offender's hair. Tyner already testified she did not "pay attention" to that detail and no further questions followed her single reference to braids during the preliminary examination. Accordingly, impeachment on the issue of Petitioner's hair was not clear or guaranteed.

The Michigan Court of Appeals did not specifically address *Strickland*'s prejudice prong. Instead the court proceeded directly to a harmless error analysis. AEDPA's deferential standard applies to the state court's harmless error determination. *Ayala*, 576 U.S. at 269. The Michigan Court of Appeals reasonably concluded that any failure to cross-examine Tyner about Petitioner's hairstyle was harmless when balanced against other incriminating evidence including Petitioner's fingerprint on Tyner's phone, testimony that cellphone records showed Petitioner was in the vicinity of the hotel at the time of the crime, and

16

that the last phone number to call Tyner's phone was registered to the mother of Petitioner's child. The state court's reasonable determination that any error was harmless means that the error was not prejudicial under *Strickland*. *See Kyles v. Whitley*, 514 U.S. 419, 435-436 (1995) (where an error is harmless a petitioner cannot make a showing of *Strickland* prejudice); *Wright v. Burt*, 665 F. App'x 403, 410 (6th Cir. 2016).

Finally, Petitioner argues that counsel was ineffective for failing to present evidence that he did not wear braids at the time of the offense.[1] Petitioner offered two affidavits in support of this argument, one from his sister and the other from the mother of his children. (*See* ECF No. 6-12, PageID.783-84, 789-90.) Both affidavits state that Petitioner has always had thinning hair, has never had braids, and has never been able to grow

---

[1] The Michigan Court of Appeals did not separately address this portion of Petitioner's ineffective assistance of counsel claim. Nevertheless, the deferential standard set forth in § 2254(d) presumptively applies even where the state court deciding a federal claim "issues an opinion that . . . does not expressly address the federal claim in question." *Johnson v. Williams*, 568 U.S. 289, 292 (2013). "[T]he federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits." *Id.* at 293. Petitioner has not attempted to rebut the presumption that the state court implicitly rejected this portion of Petitioner's ineffective assistance of counsel claim on the merits. The Court accordingly applies a deferential standard of review.

17

braids. It was not unreasonable for defense counsel not to present this evidence because it would not have significantly impeached Tyner. Tyner testified at trial that she "didn't pay attention" to the perpetrator's head or hair. She thought he might have worn a hat because it was cold, but emphasized that she was not concerned at the time about the perpetrator's hairstyle or what he may have worn on his head. This testimony was not inconsistent with her statement made just after the shooting that a hoodie covered the perpetrator's head. (ECF No. 6-12, PageID.979.) Considering this and the much greater impeachment value from Tyner's previous identification of a different individual as the perpetrator, it was reasonable for counsel to focus on a different avenue of impeachment. Further, for the reasons discussed above, Petitioner was not prejudiced by any error.

## V. Certificate of Appealability

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the applicant has

made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (internal quotes and citations omitted).

Reasonable jurists would not find the Court's assessment of Petitioner's claims to be debatable or wrong. The Court therefore declines to issue a certificate of appealability.

The Court grants Petitioner leave to appeal *in forma pauperis* because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

## VI. Order

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus and a certificate of appealability is **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Petitioner may proceed on appeal *in forma pauperis*.

IT IS SO ORDERED.

Dated: November 18, 2021         s/Judith E. Levy
Ann Arbor, Michigan              JUDITH E. LEVY
                                            United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 18, 2021.

                                         s/William Barkholz
                                         WILLIAM BARKHOLZ
                                         Case Manager